# United States District Court

__NORTHERN__ DISTRICT OF __TEXAS__

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
JUN 25 2013
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| V. | **COMPLAINT** |
| NASEEM KHAN | CASE NUMBER: 3-13-MJ-383.BH |

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. Beginning on or about <u>January 2012 to the present</u> in <u>Dallas</u> Counties, in the Northern District of Texas, defendant(s) did,

> knowingly and intentionally combine, conspire, confederate and agree with other persons known and unknown to commit the following offense against the United States: to possess with intent to distribute a Schedule I controlled substance analogue,

in violation of Title __21__ United States Code, Section(s) __841(a)(1) & (b)(1)(B), 846 and 863__.

I further state that I am a(n) __Special Agent__ of the __Drug Enforcement Administration (DEA)__ and that this complaint is based on the following facts:

> See attached Affidavit of Task Force Officer, James H. Lasater, DEA, which is incorporated and made a part hereof by reference.

Continued on the attached sheet and made a part hereof:    XX Yes    No

_____
Signature of Complainant
James H. Lasater
Task Force Officer, DEA

Sworn to before me and subscribed in my presence, on this 25th day of June, 2013, at Dallas, Texas.

IRMA C. RAMIREZ
UNITED STATES MAGISTRATE JUDGE
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, James H. Lasater, a Task Force Officer with the Drug Enforcement Administration (DEA), being duly sworn, depose and state as follows:

### Introduction

1. I have been Task Force Officer with DEA since February 2010, and I am assigned to the Dallas Field Division Office to conduct investigations of violations of federal drug statutes. I have conducted and participated in previous investigations of violations of the drug laws of the United States, including violations of Title 21, United States Code, Section 841(a)(1), 846, and 863.

2. I am a law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, and I am empowered by law to conduct criminal investigations and to make arrests for federal felony offenses.

3. I have reason to believe that, Naseem Khan (Naseem) has unlawfully committed a violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), 846, and 863 - conspiracy to possess with the intent to distribute a Schedule I controlled substance.

4. I obtained the following information from my own observations and information provided to me by other law enforcement officers involved in the investigation.

## Synthetic Cannabinoids

5. The Controlled Substances Act (CSA) contains a drug analogue[1] statute that classifies chemical analogues of existing scheduled drugs as a scheduled drug in the same category. As a result of this statute and the prevalence of marijuana analogues, on March 1, 2011, DEA administratively placed five synthetic cannabinoids that were commonly found in synthetic marijuana products (JWH-018, JWH-073, JWH-200, CP-47,497, and Cannabicyclohexanol) in Schedule I of the CSA, which temporarily banned them and their analogues for one year pending DEA and Food and Drug Administration studies. On February 29, 2012, DEA extended the Schedule I status of these substances for six months pending the passage of a final regulatory ruling.

6. On July 9, 2012, the President signed into law the Synthetic Drug Abuse Prevention Act of 2012 (SDAPA). SDAPA amended the Controlled Substances Act by placing 26 substances in Schedule I. The list of legislatively scheduled controlled substances is found at 21 U.S.C. 812(c) and the current list of scheduled substances is published at 21 C.F.R. § 1308. These initial schedules may be modified either by legislation or by rulemaking. The legislation also creates a new definition for "cannabimimetic agents,[2]" which creates criteria by which similar chemical compounds

---

[1] A controlled substance analogue is defined as a substance which: (1) has a chemical structural substantially similar to that of a controlled substance in Schedules I or II; (2) has a stimulant, depressant or hallucinogenic effect on the central nervous system that is substantially similar to or greater than that of a controlled substance in Schedules I or II; or (3) a particular person represents or intends to have a stimulant, depressant, or hallucinogenic effect substantially similar to or greater than that of a controlled substance in Schedules I or II [21 U.S.C. 802(32)].

[2] "Cannabimimetic agents," as defined in SDAPA are controlled under Schedule I and unless specifically exempted or unless listed in another schedule, any material, compound, mixture, or preparation which contains any quantity of the following

**Affidavit in Support of Criminal Complaint - Page 2 of 6**

can be controlled. Synthetic cannabinoids refer to a family of substances that act on the brain similar to delta-9 THC, the main psychoactive constituent of cannabis.

7. On December 21, 2012, DEA published a rule to establish drug codes for these substances, and to make technical and conforming amendments in accordance with SDAPA.

8. DEA has also placed the following substances on a temporary listing of substances subject to emergency scheduling. Any material, compound, mixture, or preparation which contains any quantity of the following substances:

   a) 4-methyl-N-methylcathinone (mephedrone);

   b) 3,4-methylenedioxy-N-methylcathinone (methylone); and

   c) 3,4-methylenedioxypyrovalerone (MDPV)

9. On May 16, 2013, DEA made the synthetic cannabinoids UR-144, XLR-11, and AKB48 Schedule I, illegal drugs under the Controlled Substances Act (CSA) for the next two years. Part of the press release explained "These cannabinoids are often seen in

---

substances, or which contains their salts, isomers, and salts of isomers whenever the existence of such salts, isomers, and salts of isomers is possible within the specific chemical designation:
   a. 5-(1,1-dimethylheptyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (CP-47,497);
   b. 5-(1,1-dimethyloctyl)-2-[(1R,3S)-3-hydroxycyclohexyl]-phenol (cannabicyclohexanol or CP-47,497 C8-homolog);
   c. 1-pentyl-3-(1-naphthoyl)indole (JWH-018 and AM678); 1-hexyl-3-(1-naphthoyl)indole (JWH-019);
   d. 1-[2-(4-morpholinyl)ethyl]-3-(1-naphthoyl)indole (JWH-200);
   e. 1-pentyl-3-(2-methoxyphenylacetyl)indole (JWH-250);
   f. 1-pentyl-3-[1-(4-methoxynaphthoyl)]indole (JWH-081);
   g. 1-pentyl-3-(4-methyl-1-naphthoyl)indole (JWH-122);
   h. 1-pentyl-3-(4-chloro-1-naphthoyl)indole (JWH-398);
   i. 1-(5-fluoropentyl)-3-(1-naphthoyl)indole (AM2201);
   j. 1-(5-fluoropentyl)-3-(2-iodobenzoyl)indole (AM694);
   k. 1-pentyl-3-[(4-methoxy)-benzoyl]indole (SR-19 and RCS-4);
   l. 1-cyclohexylethyl-3-(2-methoxyphenylacetyl)indole 7008 (SR-18 and RCS-8);
   m. 1-pentyl-3-(2-chlorophenylacetyl)indole (JWH-203) and
   n. 1-butyl-3-(1-naphthoyl)indole (JWH-073);

**Affidavit in Support of Criminal Complaint - Page 3 of 6**

so-called 'fake pot' products that are falsely marketed and sold as 'herbal incense' or 'potpourri' products on the Internet and by a variety of retail stores."

10. Pursuant to 21 U.S.C. § 813, a controlled substance analogue (even one not specifically listed on the banned list) will be treated, for purposes of Federal law, as a controlled substance in schedule I if the substance is intended for human consumption.

### Facts

11. On March 14, 2013, DEA investigators conducted a controlled buy at Texas Smoke Outlet, located at 11115 Harry Hines Blvd., Dallas, Texas, with the assistance of a Confidential Source[3] (CS). Upon entering the business, the CS was met by an unidentified male who was working behind the counter. The CS stated that he/she wanted to purchase $500 worth of "spice."[4] The unidentified male informed the CS that the man he/she needed to talk with would be there in about 45 minutes and that the CS should come back then. The CS departed the location and returned 45 minutes later and was met by a male subject, who introduced himself as Naseem. The CS inquired of Naseem if he was the owner and Naseem confirmed that he owned Texas Smoke Outlet. At this point the CS stated that he/she wanted to purchase $500 of "spice." Naseem went to the rear of the store and returned a few minutes later carrying a plastic bag, which he handed to the CS. The CS opened the bag and found that it contained several packets of synthetic cannabinoids. Naseem advised the CS that the cost of "spice" was $540. The

---

[3] This Confidential Source has provided the DEA and others with information in the past which has proven to be credible and reliable. In addition, the Confidential Source advised investigators that he/she has been purchasing synthetic cannabinoids from Naseem since June 2012, and Naseem requires these purchases to be on a "cash only" basis.
[4] "Spice" is a common street slang for smokeable synthetic marijuana.

**Affidavit in Support of Criminal Complaint - Page 4 of 6**

CS paid Naseem and departed Texas Smoke Outlet. Investigators examined the plastic bag of "spice" purchased by the CS and observed that it consisted of 20 packets of synthetic cannabinoids labeled "7H Hydro," 20 packets of synthetic cannabinoids labeled "Bob Marley," and 10 packets of synthetic cannabinoids labeled "Diablo." These items were later submitted to the DEA laboratory for analysis and confirmed to be the marijuana analog XLR-11 on June 21, 2013.

12. On June 19, 2013, DEA investigators conducted another controlled buy at Texas Smoke Outlet for the purchase of synthetic cannabinoids. At approximately 1:00pm, the CS and a Source of Information (SOI), who was accompanying the CS, entered the store. Once inside, the CS and SOI met with Naseem, who was working behind the counter and greeted the CS by his/her name. At this time the CS informed Naseem that he/she wanted to buy some pipes and other merchandise which he/she could resell. The CS further informed Naseem that he/she wanted to buy $500 of "spice." Naseem responded by telling the CS that he/she needed to purchase at least $650 of "spice" because he didn't want to split it up. The CS advised Naseem that he/she only had $500 in cash budgeted to purchase spice, but he/she also wanted to purchase other items, including pipes, grinders and flavor packs. The CS inquired as to whether Naseem would accept a check for the additional items the CS wanted to purchase. Naseem agreed to this arrangement and went to the back of the store to retrieve the "spice." After a brief period Naseem returned to the front of the store and handed the CS a black plastic bag,

which contained several packets of "spice" labeled "Mister Nice Guy Hydro." At this time the CS gave Naseem $500 in cash for the "spice."

13. After the CS and the SOI had exited the store, investigators examined the plastic bag and found that it contained a large plastic zip-loc baggie, which contained 73 three gram packets of "Mister Nice Guy Hydro." These items were placed in a evidence envelope and submitted to the DEA laboratory for analysis and safekeeping, and on June 25, 2013, the DEA laboratory confirmed that "Mister Nice Guy Hydro" contained the marijuana analog XLR-11.

## Conclusion

14. For the reasons stated above, I believe that probable cause exists that Naseem Khan has committed a violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C), 846, and 863 - conspiracy to possess with the intent to distribute a Schedule I controlled substance.

_____
James H. Lasater
Task Force Officer
Drug Enforcement Administration

Subscribed and sworn to before me this the 25th day of June, 2013.

_____
IRMA C. RAMIREZ
United States Magistrate Judge